UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON BRIGGS,

            Plaintiff,                    Case No. 1:22-cv-798

v.                                          Honorable Ray Kent

UNKNOWN JONES et al.,

            Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.11.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Terhaar, Povostat, Fricke, Miller, West, Ruddick, Unknown Party #1, Unknown Party #2, and Knapp.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues Defendants Unit Officers Unknown

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Jones, Unknown Terhaar, Unknown Povostat, and Unknown Fricke. Plaintiff also sues Assistant Deputy Warden Unknown Miller, Resident Unit Manager Unknown West, Qualified Mental Health Personnel Unknown Ruddick, Lieutenant A. Knapp, and Unknown Parties #1 and #2, named as Shift Command Sergeant white male and Shift Officer white male.

In his complaint, Plaintiff alleges that on February 7, 2022, he was placed in segregation after being stabbed by several inmates, which resulted in Plaintiff being hospitalized. Plaintiff attended his misconduct hearing on February 14, 2022, where he asserted his desire not to return to the general population. Upon returning to his cell, Plaintiff handed a note to Defendant Fricke stating that his life would be in danger in the general population and requesting protective custody. Moments later, Defendant West asked Plaintiff if he was sure that he wanted to request protective custody and Plaintiff said that he was in too much danger at the facility. Defendant West "said ok and walked away." (ECF No. 1, PageID.6.)

Plaintiff attaches a copy of a misconduct hearing report for a fighting misconduct, which Plaintiff received on February 7, 2022. (ECF No. 1-12, PageID.26–27.) Plaintiff refused to cooperate with the hearing investigator or to make any comments when asked questions regarding the incident. (*Id.*, PageID.27.) Video of the area was reviewed and showed prisoner Lefebver following Plaintiff into the bathroom. (*Id.*) Shortly thereafter, Lefebver and Plaintiff came back out into the hallway and an officer saw them swinging clenched fists at each other. (*Id.*) Video showed Lefebver swing his left fist at Plaintiff, who had his arms and fists up. (*Id.*) Plaintiff then ran to the base area holding his head. (*Id.*) The Hearings Officer, Administrative Law Judge Jollands, found that Plaintiff had at least swung his fist at Lefebvar, which was sufficient to uphold the charge of fighting. (*Id.*)

Plaintiff also attaches a copy of a Request for Protection/Investigation Report, which indicates that Plaintiff was stabbed during a fight with Lefebvar and that he feared for his life if returned to the general population. (ECF No. 1-13, PageID.28.) In addition, it was noted that Plaintiff had "been suspected of threatening and trying to extort other prisoners" since being at MCF. (*Id.*) It was determined that Plaintiff should remain in segregation pending a Security Classification Committee (SCC) interview. (*Id.*)

On February 16, 2022, Plaintiff attended a hearing with the SCC and spoke with Defendant Miller. Defendant Miller asked Plaintiff a series of questions regarding the misconduct, and Plaintiff told her that a Security Threat Group had orchestrated a hit on him, stabbing him, and cutting him with a razor. Plaintiff stated that if he was released to the general population, he would be in danger of another attack by members of this group and asked to be transferred to another facility.

On March 21, 2022, Defendant Terhaar approached Plaintiff's door and ordered him to pack up his belongings because he was being moved to overflow segregation, which was in the general population area of Unit One. Plaintiff states that this is the unit where he was attacked, and Plaintiff told Defendant Terhaar that he feared he would be attacked again. Defendant Terhaar ignored Plaintiff and left the area. Moments later, Defendant Ruddick came to Plaintiff's cell and asked what was going on. Plaintiff responded that he was having a panic attack because he was afraid of moving to the overflow unit. Defendant Ruddick stated that there was nothing she could do. Defendants Povostat, Jones, and Unknown Parties #1 and #2 ordered Plaintiff to move to overflow, and Defendant Unknown Party #1 told Plaintiff that he could go willingly or be gassed. Plaintiff reiterated that he would be assaulted if he moved to overflow, but Defendant Unknown Party #1 responded that they needed Plaintiff's cell for a gender identity disorder inmate, so

Plaintiff had to move. Plaintiff felt forced to comply and was placed in restraints and escorted to cell 38 in the overflow unit.

Approximately twenty minutes later, Defendant Jones opened Plaintiff's cell and told him to go to the bathroom. Plaintiff stated that his life was in danger, but Defendant Jones merely walked away, leaving Plaintiff's cell open, which violated the requirement that staff accompany a segregation inmate to the bathroom. Plaintiff proceeded to the bathroom alone and was immediately assaulted by another inmate, who knocked Plaintiff unconscious. Plaintiff was subsequently placed in a chair in restraints by Defendant Terhaar, where he remained for over three hours. During this time, he was denied health care even though he was dizzy, nauseated, and his face was swollen. Plaintiff was eventually placed in a segregation cell and was transferred to Ionia Correction Facility the next morning.

Plaintiff attaches a copy of the grievance he filed following the March 21, 2022, assault, as well as the grievance responses. (ECF Nos. 1-3, 1-4, 1-5, and 1-6.) In the step I grievance response, Inspector Goostrey stated:

> A thorough review of your allegation was completed. You were placed in Segregation overflow due to your scheduled ride out the next morning. None of the staff interviewed stated you ever mentioned anything about being in fear for your life before you asked to use the bathroom. While you were not under direct escort, you were under constant supervision. As soon as the prisoner attempted to assault you, staff intervened and stopped it. As staff acted quickly, stopping the assault, I do not find any staff were deliberately indifferent toward your issue. And, as staff are not accountable for prisoner actions, I am denying your grievance.

(ECF No. 1-4.) The step II and III responses indicated that the record had been reviewed and that there had been no violation of policy. (ECF Nos. 1-5, 1-6.)

Subsequently, Plaintiff was transferred to the Ionia Correctional Facility (ICF). While at ICF, Plaintiff was treated for Post-Traumatic Stress Disorder (PTSD) and was referred to a

6

psychiatrist. Plaintiff states that it was determined that his condition is a direct result of being assaulted at MCF.

Plaintiff asserts that Defendants violated his rights under the Eighth Amendment and seeks damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

7

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Failure to Protect**

Plaintiff claims that Defendants failed to protect him in violation of the Eighth Amendment. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Plaintiff asserts that Defendant Jones purposely left Plaintiff's cell door open and instructed him to go to the bathroom without an escort despite knowing that Plaintiff was in danger of being

8

assaulted. The Court concludes that Plaintiff has alleged sufficient facts to state an Eighth Amendment failure to protect claim against Defendant Jones for allowing him to go to the bathroom alone in a unit where Plaintiff had previously been attacked.

Plaintiff also contends that the other named Defendants disregarded his claims that he would be harmed if moved to overflow segregation, which is in the general population area where Plaintiff had previously been attacked, and that this resulted in the assault. However, Plaintiff fails to allege facts showing that Defendants Terhaar, Povostat, Fricke, Miller, West, Ruddick, Unknown Party #1, Unknown Party #2, and Knapp had any reason to know that Plaintiff would be allowed to go to the bathroom alone where he was vulnerable to attack. In fact, as noted above, Plaintiff asserts that this violated the requirement that segregation prisoners be escorted to the bathroom. Because Plaintiff has not alleged any facts showing that Defendants Terhaar, Povostat, Fricke, Miller, West, Ruddick, Unknown Party #1, Unknown Party #2, and Knapp[2] disregarded a

---

[2] In fact, Plaintiff fails to make any factual allegations against Defendant Knapp. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Knapp in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

known risk that he would be attacked, his Eighth Amendment claims for failure to protect are properly dismissed.

### B. Use of Restraints

As noted above, Plaintiff claims that following the assault on March 21, 2022, Defendant Terhaar placed him in a chair in restraints, where he remained for over three hours. During this time, he was denied health care despite suffering from dizziness, nausea, and swelling to his face. Plaintiff alleges that he was eventually diagnosed with PTSD but does not allege that he suffered any serious physical injury as a result of this treatment.

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v.*

10

*Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

In this case, Plaintiff had just been involved in an altercation with another prisoner and the use of restraints was for a relatively short period of time, three hours. Plaintiff does not complain that they were improperly applied or overly restrictive, or that he suffered any physical injury as a result of their use. For these reasons, the Court concludes that the use of restraints in this case did not rise to the level of an Eighth Amendment violation.

    **C.**    **Denial of medical care**

Finally, Plaintiff claims that following the assault on March 21, 2022, he "requested medical," but "never received any medical attention." (ECF No. 1, PageID.8.) The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Plaintiff alleges that after he was placed in the restraint chair on March 21, 2022, following the assault by the other inmate, he "requested medical," but "never received any medical attention." (ECF No. 1, PageID.8.) Although Plaintiff alleges that Defendant Terhaar put Plaintiff in the restraint chair, Plaintiff does not allege that he asked any of the named Defendants to call medical. Indeed, Plaintiff simply states that he "requested medical," but Plaintiff does not indicate to whom he made this request. Moreover, although Plaintiff indicates that he was later diagnosed with PTSD related to the assault, besides swelling to his face, Plaintiff fails to allege any facts suggesting that he made anyone aware of any specific physical injury that required immediate medical attention. Because Plaintiff has failed to allege facts showing that he had an objectively serious need for medical attention that was knowingly disregarded by any of the named Defendants, his Eighth Amendment denial of medical care claim is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Terhaar, Povostat, Fricke, Miller, West, Ruddick, Unknown Party #1, Unknown Party #2, and Defendant Knapp will be dismissed for failure to state a claim, under 28

U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment failure to protect claim against Defendant Jones remains in the case.

An order consistent with this opinion will be entered.


Dated:  January 27, 2023                    /s/ Ray Kent
                                            Ray Kent
                                            United States Magistrate Judge